IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **DECAPOLIS SYSTEMS, LLC,**<br>*Plaintiff*<br><br>-vs-<br><br>**ECLINICALWORKS, LLC,**<br>*Defendant* | § § § § § § § § | **W-21-CV-00502-ADA** |

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant eClinicalWorks, LLC's ("eClinical") Motion to Transfer Venue to the District of Massachusetts. ECF No. 15. Plaintiff Decapolis Systems, LLC ("Decapolis") opposes the motion (ECF No. 19); eClinical filed a reply and notice to further support its motion (ECF Nos. 20, 27). Upon review, eClinical's motion is **GRANTED**.

### I.  FACTUAL BACKGROUND

In its complaint, Decapolis claims eClinical infringed on U.S. Patent Nos. 7,464,040 ("the '040 Patent") and 7,490,048 ("the '048 Patent") (the "Decapolis patents"). ECF No. 1 at 4. Decapolis, the owner of the Decapolis patents, is a limited liability company organized under the laws of the state of Florida—its principal place of business is also in Florida. *Id*. at 1. eClinical is a corporation organized under the laws of the state of Massachusetts, where its principal place of business is located. *Id*. eClinical provides technology solutions, including systems, services, and platforms, that, *inter alia*, allow healthcare providers to better manage their practices, records, and billing. *Id*. at 9–13. While its principal place of business is in Massachusetts, it has offices in several states—including Texas—and sells its services and products throughout the United States. *Id*.; ECF No. 15-1 at 2.

After answering Decapolis's complaint, eClinical filed the instant motion to transfer. ECF No. 15. It does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the District of Massachusetts ("DM") is simply a more convenient forum, leaning heavily on the location of potential witnesses and relevant records. *Id*. at 5. Decapolis contends that the case should remain in the WDTX, pointing to, among other factors, the other pending actions it filed in this Court involving the Decapolis patents. ECF No. 19 at 4.

## II.   LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the 5th Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203

2

(5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is *clearly* more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.  DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the DM. Neither party contests that venue could be proper in the DM. eClinical's principal place of business is in the DM and it has engaged in sales of its allegedly infringing products there. This Court therefore finds that venue would have been proper in the DM had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine if the DM is a clearly more convenient forum than the WDTX.

A. **The Private Interest Factors**

   *i.   The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

According to eClinical, its relevant documents are stored in the DM. ECF No. 15 at 10; ECF No. 15-1 at 4. Apparently, the allegedly infringing products were developed in the DM, the eClinical employees with knowledge of the products are in the DM, and all the related code is there as well. *Id.* at 3. It admits that it has an office in Austin but states that no proof is stored there and no employees in that office have relevant knowledge of the products. *Id.* at 2. Decapolis responds that while the relevant documents are not stored in the WDTX, they are easily accessed here. ECF No. 19 at 8. It also contends that eClinical failed to identify specific documents that might be relevant and unavailable to it in the WDTX. *Id.*

More sources of proof likely reside in, and are likely more easily accessed in, the DM than the WDTX. eClinical headquarters are located in the DM. Documents relevant to acts of infringement are stored in those offices. Although Decapolis is correct that eClinical did not identify specific relevant documents in its Motion, the managers and executives who control marketing and sales documents are also employed and located at those headquarters. ECF No. 15-1 at 3–4 (identifying eClinical employees with knowledge of the allegedly infringing products and

4

providing those individuals' locations). Thus, even if specific documents were not identified, the employees who control them are in the DM and will likely produce them for trial from that office. Additionally, Decapolis fails to show that *any* relevant documents actually reside in the WDTX.

The Court finds that this factor favors transfer.

### ii.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

The parties agree that at this moment, there are no non-party witnesses that may require compulsory process. ECF No. 15 at 11; ECF No. 19 at 9. All identified witnesses are either party named inventors or employees of eClinical.

The Court finds that this factor is neutral.

### iii.  *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317.

5

But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

eClinical identifies five of their own party witnesses who will likely testify. Those witnesses are CEO Girish Navani, Vice President of Technology Bharat Satyanaryan, Chief Financial Officer Mark Speyer, Vice President of Sales and Marketing Sameer Bhat, and Vice President of Revenue Cycle Management Kapil Langer. ECF No. 15 at 12. All live and work in the DM. *Id.*; ECF No. 15-1 at 3. eClinical also states that although it has employees in Austin, none of those employees have relevant knowledge for this matter. ECF No. 15-1 at 2.

Decapolis does not dispute these statements but argues these witnesses are unlikely to be called at trial. ECF No. 19 at 9–10. By contrast, it claims the WDTX is a more convenient forum for its potential witnesses—the inventor, its retained technical consulting expert, and its damages expert. Ray Joao, the inventor, resides in New York. *Id.* On the other hand, the damages expert resides in Houston, Texas, and the retained technical consulting expert resides somewhere else in this great state (though presumably not the WDTX, as Decapolis would have likely mentioned that detail). *Id*. Relevantly though, the convenience of expert witnesses—who are paid for their services

and travel—is given little weight in the transfer analysis. *Mediostream, Inc. v. Acer Am. Corp.*, No. 2:07-cv-376, 2008 WL 4444327, at *3 (E.D. Tex. Sept. 26, 2008). And similarly, Joao, residing in New York, is considerably closer to the DM than the WDTX; while Decapolis shows the difference in cost between temporarily staying in the two districts, (ECF No. 15 at 10), the difference is not monumental, and it fails to account for the difference in cost of travel, distance, and travel time between the two districts. While the Court gives weight to witnesses that testify one forum is more convenient than another, even when they live closer to the transferee forum, Joao's convenience argument is a stretch too far. Further, Decapolis does not address the substantial reduction in costs, distance, and travel time for eClinical's witnesses if the case is transferred to the DM. For them, the DM is clearly more convenient.

At this moment, no potential witnesses live in the WDTX, so no witnesses will be overly burdened if the case is transferred out of the district. And while Decapolis's experts may reside in the state, their location cannot control this factor. The Court is left with eClinical's employees and Joao. For both, the DM is more convenient than the WDTX.

The Court finds that this factor favors transfer.

> iv. ***All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive***

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit

cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

eClinical asserts that there are no practical problems associated with a transfer and there is no judicial economy to be gained by refusing transfer because the case is in its early stages, despite the fact that Decapolis has multiple other pending suits in front of this Court involving the Decapolis patents. ECF No. 15 at 13–14. Decapolis responds that the presence of ten associated cases involving the same patents co-pending in this Court raises substantial practical problems—judicial economy and efficiency would seem to weigh against splitting these suits apart. ECF No. 19 at 7. In reply, eClinical points to the fact that Decapolis has already dismissed five of those ten cases and that a suit involving the Decapolis patents has been filed in a third district, the Southern District of Florida. ECF No. 20 at 8; ECF No. 27 at 1. Its motion admits, though, that at least five other cases asserting the Decapolis patents are pending in front of this Court.

Time flies—after reviewing its current docket, the Court can identify *20* total cases filed by Decapolis regarding the Decapolis patents. Six have since been closed.[1] Why they were closed is irrelevant to this analysis. But fourteen, including the case at bar, are still pending.[2] In each matter, Decapolis asserted the same two patents as it did in this case. Five, including this case, are set for the same *Markman* hearing on March 8, 2022. *See* ECF No. 24.

As an initial matter, the case in the Southern District of Florida will not affect this analysis; regardless of whether this motion is granted, that case will remain by itself in Florida. The existence of fourteen co-pending cases in the WDTX, however, does raise substantial practical

---

[1] 6:21-CV-0421-ADA; 6:21-CV-0434-ADA; 6:21-CV-0489-ADA; 6:21-CV-0496; 6:21-CV-0519; 6:21-CV-0574.
[2] 6:21-CV-00391-ADA; 6:21-CV-00421-ADA; 6:21-CV-00434-ADA; 6:21-CV-00489-ADA; 6:21-CV-00496-ADA; 6:21-CV-00502-ADA; 6:21-CV-00519-ADA; 6:21-CV-00574-ADA; 6:21-CV-00607-ADA; 6:21-CV-00656-ADA; 6:21-CV-00686-ADA; 6:21-CV-01179-ADA; 6:21-CV-01192-ADA; 6:21-CV-01252-ADA; 6:21-CV-01253-ADA; 6:21-cv-01262-ADA; 6:21-CV-01263-ADA; 6:21-CV-01273-ADA; 6:21-CV-01286-ADA; 6:21-CV-01287-ADA.

hurdles to transfer. Although it is true that this factor alone is not dispositive, this Court has previously held that when there are parallel actions involving the same patents, this factor weighs heavily against transfer. *See NCS Multistage v. Nine Energy Serv.*, C.A. No. 6:20- 00277-ADA, 2021 U.S. Dist. LEXIS 60219, at *8 (W.D. Tex. Mar. 30, 2021). The Federal Circuit looks at such situations similarly. *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3. Transfer of this individual case to the DM then, while the other 13 cases involving the same patents and questions proceed here, would create significant practical difficulties. Not only would two courts be ruling on the same patents asserted by the same plaintiff, thus wasting judicial resources, but there would also be a risk of inconsistent rulings on the patents-in-suit. Significant judicial economy would be gained by trying all 14 cases in the same court.

The Court finds that this factor weighs against transfer.

### B. The Public Interest Factors

#### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). It considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

eClinical argues that this factor is neutral but admits that the WDTX has a faster time to trial than the DM. ECF No. 19 at 15. Recent data confirms this Court's speed—it has consistently been able to bring patent cases to trial within two years after filing a complaint. *See, e.g., MV3*

*Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, 2020 WL 6439178 (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial). Neither party provided similar statistics about the DM, so its speed is unknown.

of the stay order.

As both Decapolis and eClinical note, the speed in getting a case to trial is determinative under this factor. The Federal Circuit has been clear—rapid disposition of cases is paramount. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).

eClinical asserts that court congestion is the "the most speculative" factor which should be given lesser weight. ECF No. 19 at 15. But the Federal Circuit has only instructed that this factor should not by itself be dispositive in keeping a case in the transferor forum; it has not held that this factor should receive lesser weight. *In re Genentech, Inc.*, 566 F.3d at 1347 (merely noting that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors."); *In re Juniper*, 14 F.4th

1313, 1322 (Fed. Cir. 2021) (quoting *In re Genentech*); *In re Google, LLC*, No. 2021-170, slip op. at 14 (Fed. Cir. Sept. 27, 2021) (quoting *In re Genentech*).

The Court finds this factor weighs against transfer.

### ii. *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

According to eClinical, the WDTX has no local interest in this case. ECF No. 15 at 11. It admits it does sell services involving the Decapolis patents in the WDTX, and that it does have a

physical location herein, but argues neither is sufficient to create a local interest. *Id*. at 12. Instead, it asserts that the local interest lies where the relevant documents and most witnesses are: the DM. *Id*. at 11. Decapolis responds that eClinical has a "substantial business presence" in the WDTX and a local interest flows from that presence. ECF No. 19 at 11.

eClinical bears the burden to show the DM is the more convenient forum, and specific to this factor, that a local interest exists; while it does show local connections to the DM, they fail to tether those connections to the events forming the basis of alleged infringement. It merely asserts that its offices, documents, and witnesses give them a local interest. While these are relevant to factors *supra*, they are not dispositive to this one. The Federal Circuit has held that a generalized presence of office space is insufficient to give a district a local interest. *In re Apple Inc.*, 979 F.3d at 1345. At this point, with this record, this can be said about both eClinical's Austin office and its office in Massachusetts. eClinical has failed to show how their offices or employees in the DM have engaged in any conduct relevant to the alleged infringement. Still, the DM likely has a localized interest in this case. eClinical's headquarters is there, so even if eClinical didn't show a connection in its motion, it can be presumed that some of the events giving rise to infringement occurred there, such as the design and development of the systems in the infringing product. Simply put, the DM is eClinical's home.

In opposition, Decapolis leans on eClinical's business presence in the WDTX to formulate a localized interest. ECF No. 19 at 11. It does not attempt to refute eClinical's argument that the DM also has a local interest. It instead argues this factor is neutral. *Id*.

Both the DM and the WDTX have localized interests in this case. eClinical has a business presence in both districts. But the alleged infringing products were likely developed in the DM, and this case will call into question the work and reputation of eClinical and its employees, both

of which have a presence in the DM. *See, e.g., In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("the Eastern District of North Carolina's local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). That gives the DM a higher local interest than the WDTX in adjudicating the Decapolis patents.

The Court finds that this factor weighs in favor of transfer.

### iii. Familiarity of the Forum with the Law That will Govern the Case

Both parties agree that this factor is neutral. ECF No. 15 at 17; ECF No. 19 at 11. The Court agrees.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

eClinical asserts this factor is neutral—there are no potential conflicts here. ECF No. 15 at 17. The Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court finds that three of the factors are neutral, three favor transfer, and two disfavor transfer. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a *clearly* more convenient forum. Here, the presence of thirteen co-pending cases involving the same patents would make trial of all cases more efficient. However, the sources of proof, cost of attendance for willing witnesses, and local interest factors favor transfer. In light of the weight accorded to each of the factors in favor of transfer, eClinical has met its burden to show that the DM is a clearly more convenient forum than the WDTX despite relevant judicial efficiency concerns. The Court's conclusions for each factor are summarized in the following table:

13

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Disfavors transfer |
| Administrative difficulties flowing from court congestion | Disfavors transfer |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that eClinical's Motion to Transfer Venue to the District of Massachusetts is **GRANTED** (ECF No. 15). The Court **ORDERS** that this matter be transferred to the District of Massachusetts.

SIGNED this 1st day of March, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE